All right. Good morning. We have read your briefs and are familiar with the record and we're prepared to hear your arguments. 15 minutes for each side. Save some time for rebuttal. Please identify yourself for the record and who you represent. Good morning, Your Honors. My name is John Nowak. I'm the Assistant State's Attorney. I'm here to back the people of the State of Illinois. Mark Doddridge. I'm the Attorney's Davis. You're not often at that table, but you figured out how to get there. I turned it off. That's a good start. Now I know those people are on the right side of the courtroom over there, but whatever. My focus is more there. You've got to change codes. All right. Very good. Thank you. Please proceed. May it please the Court. The Illinois Vehicle Code required the police to immediately impound this defendant's vehicle because he was driving while his license was revoked and the vehicle was uninsured. It's undisputed that his vehicle was uninsured. How do we know the vehicle was uninsured? Through questioning through both officers, keeping in mind that the burden of proof here was never on the people. People didn't need to prove beyond reasonable doubt this vehicle was uninsured. All they had to do was counter the defendant's case. But the judge ruled for you to put on some evidence. So there was enough evidence for the court to say, I'm not sure that they asked the question. She never ruled. She never made a factual finding. But by implication, the fact that she said that you had to go on, that the people had to go on and put on something, and they had asked for a ruling in their favor, and then she said, no, please put on something, and people rested. Precisely. Because, I mean, at that point, viewing the evidence in light most favorable to the defendant at that stage, that was a proper ruling. We're not disputing that ruling. It gave the opportunity to the defendant then to meet his ultimate burden of proof here. So in the case of the driver's license, the defense had to make a valid driver's license, because the people had countered this prima facie case through the questioning of both officers. When the State questioned, beginning with Officer Pankow, was the defendant able to produce to you a valid driver's license, the answer, no, he was not. Question. Or any valid insurance for the vehicle that he was just driving. The answer, no. Was Mr. Davis asked to produce a driver's license, an insurance card? It was certainly the implication of this. But again, Your Honor, we don't know. I mean, isn't that, I mean, you spend a lot of time on people v. Nash. Yes, sir. Okay. Two, three babies, maybe more, in your brief. Do you believe that that case is as helpful as you say it is? It's not directly important, but it is helpful, Your Honor. There, the defendant in Nash, the testimony was that she told the officers affirmatively, I don't have the insurance with me. It's at my house. When did she say that? Here's, let me, I don't want, I'm not trying to play games. This is a quote from the officer, Hucker is the police officer. Hucker asked defendant for her driver's license and proof of insurance. It's right there. But, Your Honor, we don't know how that actually was in the transcript. That could have been an implication that the court itself drew. No. It says, Hucker asked defendant for proof of insurance. That's not an implication. That's a statement of the facts, right? That's a statement of fact from the court. We always do this. I mean, in every appeal, I mean, we're nuts. That's what, if we do that, we would never believe anything in an appellate court record, I mean, appellate court decision with regard to the facts. It says, Hucker asked defendant for proof of insurance. So we don't have that here. And so that distinguishes Nash, and I don't see how it's relevant at all. But that's the problem we have in this case. To me, this is the real issue that we need to decide. Again, the focus here has to be, though, not, the burden was never on the people, though, to prove this. When the people brought out the testimony through this, which the first part of this sequence, the first of these two questions, defendant admits that was the people asking defendant, that the officer asked him to produce the license. And it was phrased exactly the same way as far as the insurance. And as soon as the people produced the testimony that this defendant was unable to produce valid insurance, that at least gives rise to, that's certainly enough to counter the prima facie case that that didn't occur, that this defendant actually had vehicle insurance. All that had to do was, and again, this goes back to the ultimate burden of proof. And just like in Gibson, from the U.S. Supreme Court, there, because we countered that prima facie case, there was testimony regarding insurance and the fact that he was unable to produce proof of it. At that point, it is defendant's burden of proof on this motion to then follow up on redirect and ask the question, did you ask officers, did you ask this defendant to produce valid insurance? And then the answer would be what it would be. It was defendant's burden at that point. He had the ultimate burden of proof on this motion, and he didn't ask that question. He didn't ask that question, and he could have easily done it. Why didn't he ask that question? The record's unclear. Could it be possibly because the implication is that the officers, in fact, did ask him for that? And the answer would be, yes, we did ask him for that, to make it absolutely  But at that point, the people had brought forth enough to counter that. There was testimony about the insurance. The defendant made a prima facie case, right? Yes. Because all he had to do for that prima facie case was to say, look, I was arrested and there was a search without a warrant. Well, we're talking about the insurance. Made a prima facie case. The people have the burden of going forward with evidence to counter the prima facie case, right? Yes, but I think we're disagreeing on what the prima facie case was. The prima facie case the defendant has to make on that initial motion, and if you look at his motion, it had nothing to do with the immediate impoundment in this particular section. It was simply that under defendant's argument that there was no probable cause to arrest a defendant for not having a vehicle, to having a valid driver's license. So the prima facie case that he made was he was arrested without a warrant and there was an inventory search. That's his prima facie case to say, look, this was a warrantless arrest and search that was unvalid. And then the people put forward evidence showing, look, they knew his – they had reasonable suspicion at the very least that he was driving with his license revoked. They wave him over. They confirm, indeed, his license is revoked. They have probable cause to arrest him for that point. And we also put forward evidence that he was unable to produce valid insurance. That's enough to say, look, this requires the immediate impoundment. It's then, again, back to defendant. It's his ultimate burden of proof. It's not on the people to prove anything beyond reasonable doubt at this point. At that point, when we have evidence that he's driving under that license was revoked and there's been testimony from two officers that he was unable to produce that valid insurance, it's up to defendant, just as in Gibson, to come forward then, after that testimony comes in, to show that there was something that made that inventory search improper. He didn't do it. He had to do it. It was his burden. We didn't – it's not like this is a case where there was an absence of any testimony whatsoever about insurance. There was, from two officers. And the implication was, and certainly the prosecutor, in closing argument, made the argument that, look, the officers asked him for a license and insurance. There was no objection. There was no rebuttal to that. The circuit court didn't step in and say that's wrong. There was testimony about insurance. That was enough to counter it. Defendant then had the ultimate burden in this case. He could have redirected on this. The trial court didn't really take that inference, though, did it? It seems to me that the trial court, listening to the testimony, took the opposite inference, that the question wasn't asked. She didn't talk about the insurance whatsoever. Her focus was on whether the vehicle was legally parked. She made – she certainly didn't question the credibility of these officers in any respect. Her focus was there were people there that could have taken the case. She made an arrow of law, which is ultimately the issue here. There were factual findings here and inferences from the factual findings, which would, it seemed to me, be something that we would look at, not on the de novo, but rather on a manifest way to the evidence standard. Would you agree with that? Agreed. That would be how the factual findings would be reviewed. And we have no dispute with the circuit court's findings on them. Her findings were that this car was legally parked, that the police had probable cause to arrest the defendant, but the vehicle was legally parked, and therefore she didn't believe that there was an obligation to immediately impound it. And the people made it clear that, no, that when both these factors are present, when he's driving under with a revoked license and there's evidence that it was not insured, that there was a legal obligation by the police to immediately impound it, and they did that. And there was no factual finding on any of these points. There was simply an error of law at this point. How do you interpret the language from the statute that any such vehicle, quote, shall be subject to seizure and impoundment? Is that mandatory language? Certainly when you're reading it in context with the part about shall have, so reading here under 303E, 6-303E, where any person in violation of this section, which has to do with driver's license, who is also in violation of Section 7-601 of this license, shall have his or her motor vehicle immediately impounded by the arresting law enforcement officer, end of sentence, period. Then it says, the motor vehicle may be released to any licensed driver upon a showing of proof of insurance for the vehicle that was impounded and the notarized written consent for the release by the vehicle owner. That's the particular section that required the immediate impoundment here. It's not simply that it was arrested for driving without that license, but also that there was no proof of valid insurance here. And again, this was defendant's burden of proof. The people had no burden to prove this beyond a reasonable doubt or anything. There's evidence that he didn't, wasn't able to produce valid insurance, and those two factors, the license and the insurance, was enough to trigger this immediate impoundment. Defense counsel certainly could have redirected on this point to clarify it, and in fact, if some, seems hard to believe, but we don't know, it seems likely that the answer would be yes, we asked him. Well, we're speculating. I mean, the judge did say, I didn't hear any testimony that the procedure that the car had to be impounded, and I don't think the law requires that it be impounded. So, again, she was listening very carefully and didn't hear, I mean, we have the, in order, under the statute, you don't have a license, and then if there's no insurance on the car, nobody can drive that car. We don't want people driving a car that's not insured. So you have to have A and B. And she heard A, nothing about B. So we're talking about the impoundment here, and she was talking about the impoundment. Yes. And that's what's curious and why this really, truly is an error of law, because when this was awful, the people who filed the motion to reconsider fleshed this out, cited the particular statutes again. When the circuit court ruled in denying that motion to reconsider, she certainly had an opportunity then to make a factual, to clarify what her factual findings are, and say, no, look, State, there's actually no finding here that this defendant, that this vehicle was uninsured. She didn't make that conclusion, that factual finding at all. Instead, she just focused on a matter of law, which was this vehicle was legally parked. And certainly there are cases out there when you don't have both of these, where the defendant's just arrested for having a license revoked, and say there's valid insurance. The car's legally parked. There's then no duty under the vehicle code to tow it if it's legally parked, because someone really could operate them with the valid insurance. But when you have both, it requires that immediate impoundment. And the circuit court, even in the ruling on that motion to reconsider, said nothing as to that point. This was an error of law. The defendant had the ultimate burden of proof, and he failed to meet that burden. For these reasons and those in our briefs, Your Honor, we ask that this Court reverse the judgment of the circuit court. I have a question. Yes, Your Honor. Why didn't the State argue that the city municipal code requires and allows for the driving on a suspended or revoked license? There's no insurance requirement in that section. It's Chapter 980, Miscellaneous Rules 98240. Driving with a suspended or revoked license impoundment, A, the owner of record of any motor vehicle that is operated by a person with a suspended or revoked license, driver's license, shall be liable to the city for an administrative penalty of $1,000, plus any applicable towing and storage fees. Any such vehicle shall be subject to seizure and impoundment pursuant to this section. Why didn't the State argue that part? It would have been easier. That's what the cops were following. There was no testimony about that. I'm not clear as to why that particular tact was invaded. But at least under these facts, because we do have testimony regarding both the license and the insurance. Well, I'm concerned about a couple things. I'm concerned that whether or not the training of the police officers, the officers on the We sit up here and we tell them a lot of stuff they can't do. Maybe it would be better if we started telling them what they can do. And what they can do is impound a car if they ask the person, can I see your driver's license? Can I see your insurance card? And if that were part of their mantra, then we would have more confidence and we would not have cases like this. But they're apparently not also, they apparently are also trained about the city's ordinance. And they work for the city. And the city says, yeah, you can impound that car if there's just a suspended driver's license. That's all you need. There's no insurance requirement in that section of the city code. So if they're listening to their boss, the city, they're saying, oh, I can take this car. And so I'm concerned not only about the training that the police officers were given. I'm also concerned about whether or not the state's attorney in pursuing these cases is looking at every possible way that they can deal with the situation instead of asking us to ignore a specific word in a specific statute and A.N.D. It's there for a reason. How can we ignore that? They're also asking us to sort of pretend that at any point in time, this defendant could have, would have, should have pulled his driver's insurance, his car insurance card out of his car or out of his wallet, whatever, and said, hey, look, I'm insured, when there's no testimony about any of that. You're right, Your Honor. And certainly I should There's this leap of faith that if he had an insurance card, he would have provided it, and that the fact that he didn't provide it must mean that he didn't have one. And there's apparently no police available in-car database that says whether a car is insured or not. Is that a correct statement? There was no testimony about that. I can't speak to that. But certainly, Your Honors, again, as far as your concerns go, and they're certainly valid, that's on the defendant if this motion is suppressed to do that. This is really akin to the People v. Gibson from the Illinois Supreme Court, where there was similar discussion where the circuit court and the appellate court were concerned about whether there was enough testimony about the, the, the empowerment policy of the particular municipality in that case. And the circuit court and the appellate court said, look, we don't know. There wasn't enough information here. And the Illinois Supreme Court reversed both courts and said, look, that's defendant's burden. The defendant had the ultimate burden here, and defendant in Gibson provided, quote, nothing to show that the inventory search was improper, because defendant failed to provide that extra information. It was why the Illinois Supreme Court reversed in Gibson, and it's why this Court should also reverse. If there are evidentiary questions about that, whether he actually had it, why wasn't the officer then asked, that was defendant's burden, once the people put forth evidence that he failed to produce it. He had the burden. He failed to, to, to meet that burden. And for these reasons, and those in our briefs, Your Honors, we had this Court reverse the circuit court and remand for the proceedings. Okay. Thank you very much. Good morning. May it please the Court. With all due respect to the State, once the defense makes a prima facie case, the burden then shifts to the State to show why this invasion of this man's car was constitutional. Unfortunately, in the practice of law in Chicago, the police reports are scanned. We don't really know what happened. This was before Biden wore cameras. So as a defense attorney, and I was a defense attorney on the case, you go into a motion really not knowing what may come out of it. In this case, the judge came out of it with something different than we were all looking to do. The judge, I believe, through her ruling and what we heard later in the motion we consider, saw that we showed our prima facie case when the police searched a car that was legally parked, and she looked upon the State to show why they had the right to search that car. They didn't. If they had asked for insurance and he had no insurance, yes, maybe so. They only had a guy who did not have a valid license. They arrested him, which they should have. They had a validly parked car. At that point they should have said, do you also have insurance for that car? And if they had, then they could have legally impounded it and searched the car subject to that impoundment. The judge, listening to that evidence, believed that they didn't follow those procedures and they searched it unconstitutionally. And I don't believe the judge made any error in her ruling. The State makes much of the testimony of the officers, but there's nothing in the record to show whatsoever that they ever asked my client for insurance. They basically arrested him when they saw he was driving. The State says that's your responsibility to have asked that question. Well, I believe, Judge, that the law is that once we show our prima facie case that the burden shifts to the State to show why the search was constitutional, and they did not do that. And that's why the judge ruled in our favor. I wish I had more to tell you, but it's a pretty simple case. I just don't believe that they had asked for insurance. And I think that's pretty clear looking at the testimony of the officers. I don't think, to your point, Your Honor, I don't think they knew to ask, and that's unfortunately something that they skipped over, and it's a constitutional violation. What if, now you're the defense attorney, you're talking to the cop,  Did you ever ask for insurance? Well, Judge, as I said before, I didn't know where the circuit court judge of Stevenson was going with her ruling. I didn't know that's where she was looking. I certainly would have done that if I had known that's where her ruling was going. Well, you can't ever know until the end. But your questions come before the ruling. And I understand the very first thing they teach you in law school is don't ask a question, don't know the answer to. So we're looking at this and saying, well, the State didn't do a great job of asking the cops questions. But the defense attorney certainly could have said, hey, officer, did you ask for the insurance card? And the officer would have said yes or no. You don't know which answer he's going to come up with. If he says yes, then you've got a problem with your case. Okay, fine, it's a risk you take with a question like that. If he says no, it's a slam dunk, you've won. But you had the opportunity to ask that question to make your case. Your defendant, your client, certainly could have told you, hey, man, I have insurance. So what are we supposed to get from all of that? There's no question asked of the cops. And one reason is because you don't want to take a chance. But you wouldn't have been taking a chance if your defendant had been saying to you, here's my insurance card, they screwed up. It seems to me that that weakens your argument. Judge, I will just say, frankly and honestly, I didn't know that you needed both to impound the car. If I had known, I probably would have asked the question. I just didn't know that was the law as it stands. Well, what about the city ordinance? Well, my understanding was they could search the car if it was a revoked license. And looking at the law now and after the judge's ruling, you can't. You need insurance. I will note, Judge, that they did not write him a ticket for no insurance. And I think the state makes comments on that in their brief, but I think that's a significant issue. If they had asked for insurance, I believe, and he did not have it, they would have written him a ticket for no valid insurance. Thank you, Judge. You're welcome. Just briefly, Your Honor, it's just, again, it really, it was defendant's burden. He didn't answer that question of the officers. He didn't. Defendant could have put forward evidence, such as if he had talked to his client, if actually a vehicle was insured at that time, could put forward evidence for that. It was his burden. Well, what about the fact that there was no ticket issued for no insurance, which is a typical, I mean, every time somebody stopped, they asked for driver's license and insurance. And if you don't have them, they write tickets, right? Honestly, Your Honor, we don't know from the testimony that came out of the hearing whether or not they did ticket him for that. But ultimately, it doesn't matter that the reason for probable cause, this Court well knows, the reason that gives rise to probable cause does not have to be something that's ultimately prosecuted. And so that's a nonstarter. So, again, Your Honors, the burden was on the defendant. He failed to do that. We ask that this Court reverse. Okay. We will take the matter under advisement and issue an opinion or order forthwith. Thank you for the arguments and the briefs. We're going to adjourn briefly for a panel change for the next case.